UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
———————————————————————X

RONALD LANIER,                                           **DOCKET NO.:  CV-17-3287**

              Plaintiff

   - against -

VILLAGE OF  GARDEN CITY, GARDEN CITY
POLICE DEPARTMENT, DETECTIVE
LIEUTENANT GERARD KNEISEL, sued here
in his official and individual capacity ,                **COMPLAINT**
SARGENT MAUREN, sued here in his
official and individual capacity , POLICE
OFFICER GEORGE BYRD, sued here
in his official and individual capacity , and
POLICE OFFICER JOHN RUSSELL,
sued here in his official and individual capacity ,

              Defendants.              *JURY TRIAL DEMANDED*

———————————————————————X

    **PLAINTIFF, RONALD LANIER,** by and through his attorneys the LAW OFFICES OF

FREDERICK K. BREWINGTON, as and for his *Complaint* against the Defendants herein, states

and alleges as follows:

### PRELIMINARY STATEMENT

    1.      This is a civil action seeking monetary relief, a declaratory judgment, compensatory

and punitive damages, disbursements, costs and fees for violations of the Plaintiff's rights, abuse of

process, assault, battery, and gross negligence, brought pursuant to *42 U.S.C.* §§ 1981, 1983, and

related New York State Law claims.

    2.      Specifically, the Plaintiff alleges that the Defendants (collectively and individually)

negligently, wantonly, recklessly, intentionally and knowingly sought to and did wrongfully deprive

him of his Constitutional rights, pursuant to the above-mentioned statutes and causes of action  by

committing acts under color of law and depriving the Plaintiff of rights secured by the Constitution and laws of the State of New York.

3.      Plaintiff alleges that Defendants (collectively and individually), their agents, employees and servants unlawfully harassed, physically assaulted, and used excessive force against Plaintiff, RONALD LANIER and then failed to address those violations once they became aware of same.

4.      Plaintiff alleges that the Defendants (collectively and individually) falsely imprisoned, used excessive force against plaintiff and were grossly negligent in their handling of Plaintiff while in custody, and in their failure to offer and provide medical assistance to injured Plaintiff. Furthermore, the defendants knew of plaintiff's physical condition- having just sustained a brutal beating- and did nothing to provide report this abuse and failed to provide him with medical attention for his pain, suffering, and injuries.

5.      Defendants were grossly negligent and/or intentionally and recklessly breached their duties of care and duties to intervene with respect to their interactions with and treatment of Plaintiff as described herein.

6.      Plaintiff further alleges that Defendants (collectively and individually) were negligent in training, hiring and supervising its Police Officers, employees, representatives, and/or agents. Moreover, plaintiff alleges that Defendants (collectively and individually) were deliberately indifferent to the need to train Officers. Accordingly, Defendants are liable to the Plaintiff for abuse of process, use of excessive force, false imprisonment, battery and for creating a culture with condones and encourages such civil rights violations by failing to discipline, supervise, train , and for maliciously failing to investigate and punish the actions of the individual Defendants.

2

7.      As a result of the Defendants' actions (or lack thereof), Plaintiff suffered humiliation, embarrassment, emotional distress, physical pain and suffering, was caused to undergo medical treatment for painful physical injuries that he sustained at the hands of Defendants as a result of their use of excessive force and failure to provide medical attention to Plaintiff. Plaintiff incurred significant cost and expenses due to the Defendants' actions, including but not limited to: substantial legal fees, medical bills (due to immense worry and fear, exacerbation of pre-existing conditions, serious physical injuries), loss of quality of life, and other cost/expenses

8.      While Plaintiff was in the custody of Defendant OFFICERS, no attempt or allowance was made to remedy the excessive force, psychological assault, persisting injuries and offenses visited upon the person of RONALD LANIER, in deliberate indifference to his health, safety and well-being.

9.      The Plaintiff further alleges that the Defendants VILLAGE OF GARDEN CITY and VILLAGE OF GARDEN CITY POLICE DEPARTMENT had a duty to train, supervise and discipline police officers, including the Defendant OFFICERS, and were negligent in failing to properly hire, train, supervise and discipline the Defendant OFFICERS for their unlawful actions as described above.

## JURISDICTION AND VENUE

10.      The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343.

11.      This Court is requested to exercise supplemental jurisdiction with respect to Plaintiff's State Law claims pursuant to 28 U.S.C. §1367.

12.      Venue in the Eastern District of New York is proper under 28 U.S.C. § 1391, based on the fact that the place where the events and violations herein alleged occurred was in Nassau

3

County, State of New York.

## ADMINISTRATIVE PROCEEDINGS AND TIMELINESS

13.     On or about December 2, 2016, pursuant to New York General Municipal Law Section 50-e(1), plaintiff caused to be served on municipal defendants VILLAGE OF GARDEN CITY  and  VILLAGE OF GARDEN CITY POLICE DEPARTMENT timely Notices of Claim.

14.     More than thirty (30) days have elapsed since plaintiff's Notices of Claim and Supplemental Notices of Claim were served on defendants VILLAGE OF GARDEN CITY  and VILLAGE OF GARDEN CITY  POLICE DEPARTMENT. Plaintiff appeared and was questioned at an administration hearing pursuant to New York General Municipal Law Section 50-h on January 26, 2017. Both the VILLAGE OF GARDEN CITY  and  VILLAGE OF GARDEN CITY  POLICE DEPARTMENT have neglected and refused to adjust or pay plaintiff's claims.

15.     This action has been commenced within one year after the state law causes of action set forth herein accrued, and within the four -year statute of limitations applicable to federal civil rights actions brought pursuant to 42 U.S.C. § 1981, and within the three-year statute of limitations applicable to federal civil rights actions brought pursuant to 42 U.S.C. § 1983.

## PARTIES

16.     Plaintiff, RONALD LANIER (hereinafter "PLAINTIFF"), is a fifty three (53) year old male who currently resides in the Mineola , New York.

17.     At all times relevant in this Complaint, Defendant VILLAGE OF GARDEN  CITY (hereinafter "VILLAGE") is a municipal corporation, duly organized and existing under and by virtue of the laws of New York State. Upon information and belief, the VILLAGE  formed and has direct authority over several different departments including the GARDEN CITY POLICE

4

DEPARTMENT (hereinafter "GCPD  ") . The aforementioned department and/or the employees, agents or representatives of said department is  directly involved in violations that are the at issue in this Complaint.

18.     At all times relevant in this Complaint, and upon information and belief, LIEUTENANT GERARD KNEISEL, (hereinafter KNEISEL) is a Lieutenant  and is employed by the VILLAGE OF  GARDEN CITY under the direction of the GARDEN CITY POLICE DEPARTMENT. Defendant KNEISEL is being sued herein in his individual and official capacities.

19.     At all times relevant in this Complaint, and upon information and belief,  MICHAEL SARGENT MAUREN,  (hereinafter MAUREN) is a Sargent and is employed by the VILLAGE OF GARDEN CITY  under the direction of the GARDEN CITY   POLICE DEPARTMENT. Defendant MAUREN is being sued herein in his individual and official capacities.

20.     At all times relevant in this Complaint, and upon information and belief, POLICE OFFICER  POLICE GEORGE BYRD (hereinafter BYRD), and is a Police Officer, and is employed by the VILLAGE OF  GARDEN CITY  under the direction of the GARDEN CITY POLICE DEPARTMENT. Defendant BYRD is being sued herein in his individual and official capacities.

21.     At all times relevant in this Complaint, and upon information and belief, POLICE OFFICER JOHN RUSSELL (hereinafter RUSSELL is a Police Officer, and is employed by the VILLAGE OF  GARDEN CITY   under the direction of the GARDEN CITY    POLICE DEPARTMENT. Defendant RUSSELL is being sued herein in his individual and official capacities.

## FACTUAL ALLEGATIONS

22.     At all times relevant to this Complaint Plaintiff RONALD LANIER resided at 140 Old Country Road, Mineola, New York 11501.

23.     Plaintiff is a retired Nassau County Corrections Officer, having served twenty-two and a half (22 ½) years in law enforcement for the People of the County of Nassau and State of New York.

24.     On November 30, 2016 at approximately 6:45 p.m., Plaintiff RONALD LANIER was walking and shopping in the Western Beef Supermarket, located at 61 Second Street, Mineola, NY, just several block from his home.

25.     Upon reaching Plaintiff reaching the area of the building near the Delicatessen counter, having violated no laws and committed no crimes, Mr. Lanier was cursed at (being told 'get your fucking hands behind your back–to which Plaintiff complied), violently, aggressively excessively subjected to unreasonable force, grabbed from the rear around his neck, thrown to the ground, and abused physically and verbally by Defendants BYRD and RUSSELL.

26.     Upon asking was going on and identifying himself as a retired law enforcement officer, Mr. Lanier was callously told to "shut the fuck up, your not on the job" and that he was not an officer. The tone and level of disrespect was consistent with Plaintiff's experience in witnessing the unwarranted actions of other white officers deal with and address Black persons in their custody. Further, in addition to Defendants BYRD and RUSSELL refusal to acknowledge Plaintiff's statements, they refused to believe that Plaintiff had done nothing wrong and refused to believe that Plaintiff was a retired officer of the law.

27.     While the Defendant Officers refused to believe Plaintiff, although Plaintiff put no resistence, Defendants BYRD and RUSSELL continued to state, "shut the fuck up, you're a tough guy" as they beat Plaintiff about his torso, ribs, chest and other parts of his body in an attempt to harm and injure Mr. Lanier. During the short time that Mr. Lanier was speaking with them he was

6

cursed by Defendants BYRD and  RUSSELL continued to beat him.  Plaintiff, in an attempt to stop

the beating that was taking place n called out to on lookers in the Supermarket to take out their cell

phone and record this blatant display of police abused, excessive force and violation of civil rights.

28.     Mr. Lanier stated, "are you kidding me, what did I do?", and asked for the chance to

prove his identity to them,  however Defendants BYRD and RUSSELL failed to respond in anyway

other than saying "shut the fuck up" as they continue to beat Plaintiff.  The beating stopped and then

Plaintiff Lanier was roughly picked up by BYRD and RUSSELL and then using a great amount of

force, was then forced by Defendant BYRD toward the exit of the store as he was being displayed

to the employees, customers and patrons in the store.  As a result of this abuse, Mr. Lanier felt pain

immediately when he was beaten and then felt further pain as he was being mistreated by Defendant

BYRD as he was forced to the exit and taken from the store.  He was also subjected to humiliation,

embarrassment, fear, mortification, and horror as he was being "perp walked" in his own community.

29.     Defendants BYRD and RUSSELL used extreme and unreasonable force not only

when they beat Plaintiff about his body, but also when they  twisted Mr. Lanier's arms behind him

and intentionally used more force than was need to handcuffed Plaintiff.

30.     Upon being lifted to his feet and forcefully walked out of the store by Defendant

BYRD, Plaintiff was once again denied the chance to prove his identity to the Defendants.  Upon

emerging from the store Mr. Lanier saw a number of police cars and a number of police officers

outside of the store.  Mr. Lanier was walked to a police car and placed in the back seat,  and

Defendant BYRD began to taunt Plaintiff.  In addition, as Mr. Lanier as being walked out and while

seated in the rear of the police vehicle, no less than four officers hurled insults at Mr. Lanier and

acted in an insulting and demeaning manner while they exhibited an uncontrolled, unsupervised level

7

of aggression and vindictive nature.

31. While in the rear of the police car, and while being taunted by Defendant BYRD and other, Plaintiff responded to the taunts by saying "you fucked up and you should not have beat me." In response, Defendant BYRD scoffed and said in a demeaning and contemptuous tone of voice , "where are your bruises." Referring to Plaintiffs dark skin color as a dark skinned Black man. Seeing that even then that BYRD was intent on being abusive, Mr. Lanier turned away and said, "we don't have to talk." Then another officer came to Plaintiff and said, "where is your partner at [sic]?" Shocked at this statement, Plaintiff responded, "what are you talking about?" There was no response.

32. Then Mr. Lanier was made to sit in the rear of a police car, handcuffed for approximately twenty (20) minutes. During that time it was clearly proven that Mr. Lanier was not a criminal and had done nothing wrong to warrant the abuse and type of treatment to which he had been subjected. In fact, as Plaintiff sat in the rear of the police car, he asked to be able to retrieve his identification from his car which was parked just several parking places away. Each time, his request was ignored or denied. Plaintiff believes that he told the Defendant Officers no less than ten (10) times that he was "on the job."

33. Then, still handcuffed, Mr. Lanier observed and heard Defendant MAUREN speaking to Defendant BYRD just outside the car in which he was sitting. Plaintiff heard Defendant BYRD say, "this guy was behind the counter and we thought it was the guy." This statement was a lie as Plaintiff had never been behind the counter or anywhere near being behind the counter.

34. As Defendant BYRD lied in Plaintiff's presence, Mr. Lanier then stated, "Sarg, don't believe that shit he is trying to cover up what he did wrong, don't believe that." Plaintiff told the

8

Defendant Sargent MAUREN that he had been beaten and abused, all to no avail. Then as the Defendant MAUREN and Defendant BYRD were speaking, Plaintiff overheard a police radio transmission which reported that the suspect had been apprehended on the Western Beef roof.

35.     Then Defendant MAUREN stated, "cut him loose", referring to Plaintiff.   At this stage, no one apologized to Mr. Lanier, no one explained or sought to explain anything to him and once Plaintiff's hands were uncuffed, and no one asked Plaintiff any questions.   Mr. Lanier then sought to question about why was he treated as he was and then asked, "don't you want to see my id, to see that I am retired law enforcement?"   While Mr. Lanier was speaking to Defendant MAUREN, Defendant BYRD was standing behind his Sargent and continued to taunt Plaintiff even thought he was now cleared and had the cuffs removed.   The taunted was further evidence of the contempt and bias held against Plaintiff as a Black man.   After asking basically the same question over and over again to Defendants, Defendant MAUREN went with Plaintiff to his nearby car and Plaintiff showed his identification to Defendant MAUREN.

36.     After showing the identification to Defendant MAUREN, he did not write down Plaintiff's name, address, identification number or any other information relating to Plaintiff's identity.   The fact that the Sargent failed to learn or even record Mr. Lanier's name made him feel further abused.   Plaintiff also asked Defendant MAUREN "where is my report of what just happened?".   Defendants MAUREN told Mr. Lanier that if he wanted a report he had to come to the Garden City Police Headquarters and they will take care of that.

37.     Plaintiff then got in his car, took pictures of the scene and the officers who beat and imprisoned him,  as Garden City Police officers yelled, "that's enough pictures."  In response, Mr. Lanier told the officers, you cannot stop me from taking pictures.  Upon leaving the scene, Mr.

9

Lanier, who was in pain from being beaten, man handled and physically violated, drove himself to Emergency Room of Winthrop Hospital to seek medical care and treatment and he described how he had been injured and by whom.

38.     Mr. Lanier was prescribed medication and thereafter was referred to further treatment and diagnosis to his treating physicians.

39.     Plaintiff went to the Garden City Police Headquarters and spoke to Defendant KNEISEL. At first Defendant KNEISEL stated that someone "pointed him [plaintiff] out", and then said the they did not have a good description of the person they were looking for. Then Defendants KNEISEL, admitted that "it went wrong!" Defendants admitted that they were looking for Black man, but did not state a description of what the suspect was wearing, his skin complection, his height, his weight or other distinguishing factors. The only common element know by the police was that they were looking for a Black man.

40.     Plaintiff Lanier was also told that since they did not have his name, that he had been designated as "John Doe" on their paperwork. Plaintiff was appalled and expressed that to Defendant KNEISEL. While in the Garden City Police Department Headquarter, Plaintiff say Defendant MAUREN, but shortly after seeing him, Defendant MAUREN disappeared and was said by Defendant KNEISEL to be signing off duty.

41.     Despite being told that he could get a copy of the police report of what had taken place with Plaintiff, Mr. Lanier was not given any police report that evening or at any other time. Plaintiff returned to his home at or around 11:00 p.m. and was feeling battered, bruised, abused, emotionally violated, physically violated, professionally insulted and embarrassed, traumatized, fearful and filled with anxiety.

10

42.     Mr. Lanier continues to suffer emotionally and   physically, often coping with sleeplessness and night terrors, which affects his ability to function as he did before the incident.

## AS AND FOR A FIRST COUNT
### 42 U.S.C. § 1983 - FALSE ARREST

43.     Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 42 of this *Complaint* with the same force and effect as though fully set forth herein.

44.     Any accusations of wrongful conduct against Plaintiff were improper and false, and were an attempt to disguise and cover-up the Defendants VILLAGE, GCPD, KNEISEL , MAUREN, BYRD, and RUSSELL wrongful conduct towards the Plaintiff, causing a deprivation of his rights, privileges, and/or immunities secured by the Constitution and laws.

45.     Said wrongful conduct constituted a violation of Plaintiff's rights secured by the Fourth Amendment to the United States Constitution, to be free from unreasonable searches and seizures. Such actions were intentional, negligent, reckless, unreasonable and unauthorized, as Defendants had a duty to not subject Plaintiff to vicious beatings, false arrest, false imprisonment, wrongful cuffing and parading through the store, forced detention in the rear of a police car, denial of right to move freely as he wished and go home, denied medical treatment and summary punishment, but failed to prevent same and breached their duty.  In doing so, the Defendants violated clearly established law and the rights to which Mr. Lanier was entitled and did so with recklessness, callous indifference to the outcome of their actions and with malice, all in violation of 42 U.S.C. § 1983.  There was no probable cause to seize and arrest Plaintiff

46.     As a consequence of Defendants' wrongful actions, intentional, negligent, and reckless behavior, and violations of state and federal laws, Plaintiff was deprived of his freedom, was

11

made to suffer physical injuries, great pain and suffering, and was subjected to loss of esteem, great

fear and terror, personal humiliation, degradation, and continued to suffer physical pain and mental

and emotional distress as a result of the aforesaid unlawful conduct of the Defendants.

47.     That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable

injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as

punitive damages, costs and attorneys fees, and any other relief this Court may find just and proper.

## AS AND FOR A SECOND COUNT
## 42 U.S.C. § 1983 - EXCESSIVE USE OF FORCE

48.     Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1

through 47 of this *Complaint* with the same force and effect as though fully set forth herein.

49.     Plaintiff was never formally accused of or charged with having engaged in illegal

conduct and the Defendants' wrongful conduct illustrated the Defendants' predisposition to abuse,

brutally beat and assault the Plaintiff, causing serious and permanent injury.

50.     The vicious beating of Plaintiff by Defendants VILLAGE, GCPD, BYRD, and

RUSSELL constituted unreasonable and excessive force by a police officer, as well as, abuse of

process. Such actions were negligent, reckless, careless, unreasonable and unauthorized, as

Defendants had a duty not to subject Plaintiff to vicious and abusive police actions and false

arrest/imprisonment, but failed to prevent same and breached their duty. This summary punishment

and wrongful seizure was in violation of the rights promised to Plaintiff under the 4th, 5th, and 14th

Amendments to the United States Constitution.     In doing so, the Defendants violated clearly

established law and the rights to which Mr. Lanier was entitled and did so with recklessness, callous

indifference to the outcome of their actions and with malice, all in violation of 42 U.S.C. § 1983.

51.     As a consequence of Defendants' wrongful actions, intentional, negligent, and reckless behavior, and violations of state and federal laws, Plaintiff was deprived of his freedom, was made to suffer physical injuries, great pain and suffering, and was subjected to great fear and terror, personal humiliation, degradation, and continued to suffer physical pain and mental and emotional distress as a result of the aforesaid unlawful conduct of the Defendants.

52.     That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs and attorneys fees, and any other relief this Court may find just and proper.

### AS AND FOR A THIRD COUNT
### 42 U.S.C. § 1983 - MUNICIPAL LIABILITY

53.     Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 52 of this *Complaint* with the same force and effect as though fully set forth herein.

54.     Prior to November 30, 2017 and since, the VILLAGE  has permitted and tolerated a pattern and practice of discriminatory actions, unjustified, unreasonable and illegal uses of force, abuse of authority, beatings, and uses of weapons  by police officers of the GCPD and its governmental officials.   Although such beatings, abuse of authority, illegal use of force were improper, the officers involved were not seriously prosecuted, disciplined, supervised or subjected to restraint, and such incidents were in fact covered up with official claims that the beatings, use of force, and were justified and deemed proper. As a result, GCPD police officers within their jurisdiction were caused and encouraged to believe that civilian persons could be beaten or abused under circumstances not requiring the use of excessive force, and that such abuse and beatings would in fact be permitted by the VILLAGE  .

13

55.     In addition to permitting a pattern and practice of improper beatings and abuses in the VILLAGE and GCPD have failed to maintain a proper system of training, investigation of all incidents of unjustified beatings, abuses of authority, false arrests, and excessive use of force by police officers.

56.     The VILLAGE has failed to respond to the continuing and urgent need to prevent, restrain, and discipline police officers who wrongfully, beat, abuse authority, use excessive force, and abuse civilians, and the VILLAGE has failed to find that civilian complaints made against police officers are founded or valid in anyway, therefore the VILLAGE is liable under 42 U.S.C. § 1983 because the VILLAGE has had actual and/or constructive knowledge of the patterns of abuse and excessive force against citizens by its police officers, employees, and/or agents in violation of the United State Constitution, and because of the VILLAGE and GCPD 's un-meaningful policy and custom for reviewing complaints of misconduct, the Defendant Officers relied upon that flawed policy to continue their patterns of their abusive authority, physical abuse, excessive force, and false arrests, all in violation of the Plaintiff's rights.

57.     The VILLAGE and GCPD have maintained a system of review of unjustified seizures, beatings, shootings, and excessive use of force by police officers that has failed to identify the improper abuses of authority, brutality by police officers and failed to subject officers who abused, beat and/or brutalized citizens to discipline, closer supervision, or restraint, to the extent that it has become the custom of the VILLAGE to tolerate the improper abuses of authority beatings, illegal arrests and other wrongful actions by police officers.

58.     Further, the VILLAGE and GCPD, who maintain either supervisory and/or decision-making positions, permitted a practice of improper investigation, supervision, discipline and

14

retention of Defendant Officers. The VILLAGE and GCPD also refused and failed to prosecute the Defendant Officers thereby improperly and in violation of the Plaintiffs' rights neglected, failed, and/or delayed in administering an investigation of the circumstances surrounding the instant matter and neglected, failed, and/or delayed in presenting the matter to the District Attorney of the County of Nassau for presentation to the Grand Jury.

59.     In 1989, a building moratorium on new construction was in effect in Garden City to gain tighter control over housing development; an action the Plaintiffs allege was taken to prevent the influx of minority residents.

60.     In 2005, the New York State Attorney General determined that Garden City enforced a local requirement limiting the use of its parks to Garden City residents in a racially discriminatory manner.

61.     In or about 2006 Garden City residents accused Nassau County Executive Suozzi of "catering to ACORN and black people", and begged Suozzi not to "turn GC into Hempstead, Roosevelt, etc. . . .", citing to two towns with a large percentage of minority residents.

62.     Another example of the discriminatory actions taken by the Village Defendants is that the Village decision makers intentionally enacted R-T zone with the intent and purpose of blocking affordable housing in Garden City which actually resulted in racial discrimination. The vestiges of prior discrimination linger and remain to be eliminated on multiple levels.

63.     VILLAGE, GCPD, KNEISEL , MAUREN, BYRD, and RUSSELL have done nothing to change the actions of its officers and the culture which led to Plaintiff's wrongful treatment. Past instances of discrimination in Garden City suggest that race-based animus played a role in the decision to grab, arrest, beat, falsely accuse and detain Plaintiff because he was a Black man.

15

64.    Upon information and belief, specific systemic flaws in the VILLAGE brutality

review process include, but are not limited to, the following:

a.    Preparing reports regarding investigations of beatings and abuse
incidents as routine point-by-point justifications of police officer
actions, regardless of whether such actions are justified;

b.    Police officers investigating beatings systemically fail to credit
testimony by non-police officer witnesses, and uncritically rely on
reports by police officers involved in the incident;

c.    Police officers investigating beatings fail to include in their reports
relevant factual information which would tend to contradict the
statements of the police officers involved;

d.    Supervisory police officers at times issue public statements
exonerating police officers for excessive use of force, improper
beatings, and use of unnecessary and excessive force before the
investigation of the incident by the police department has been
completed;

e.    Reports in brutality cases are not reviewed for accuracy by
supervisory officers.  Conclusions are frequently permitted to be
drawn on the basis of clearly incorrect or contradictory information.

f.    Allowed and fostered a culture of bias, discrimination and
mistreatment of persons of color who have committed no crimes and
have refused and failed to honor the rights of persons of color due to
that systemic bias and institutionalized discrimination which they
have fostered.

65.    The foregoing acts, omissions, systemic flaws, policies and customs of the Defendants

VILLAGE and GCPD  caused the Defendant Officers  to believe that brutality and other improper

actions would not be aggressively, honestly and properly investigated, with the foreseeable result that

officers are most likely to use excessive force in situations where such force is neither necessary nor

16

reasonable.

66.     As a consequence of Defendants' wrongful actions, intentional, negligent, and reckless behavior, and violations of state and federal laws, Plaintiff was deprived of her freedom, was made to suffer physical injuries, great pain and suffering, and was subjected to great fear and terror, personal humiliation, degradation, and continued to suffer physical pain and mental and emotional distress as a result of the aforesaid unlawful conduct of the Defendants.

67.     That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs and attorneys fees, and any other relief this Court may find just and proper.

## AS AND FOR A FOURTH COUNT
### 42 U.S.C. § 1983 - FALSE IMPRISONMENT

68.     Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 67 of this *Complaint* with the same force and effect as though fully set forth herein.

69.     Any accusations of wrongful conduct against Plaintiff were improper and false, and were an attempt to disguise and cover-up the Defendants VILLAGE, GCPD, KNEISEL, MAUREN, BYRD, and RUSSELL wrongful conduct towards the Plaintiff, causing a deprivation of her rights, privileges, and/or immunities secured by the Constitution and laws.

70.     The Defendants VILLAGE, GCPD, KNEISEL, MAUREN, BYRD, and RUSSELL lacked probable cause to seize, arrest or retain Plaintiff in prolonged physical custody for a period of time.

71.     The vicious beatings, false arrest, false imprisonment, wrongful institutionalization, forced hospitalization and summary punishment against the Plaintiff by the Defendants were

17

committed under color of the law.

72.     The Defendants acted under color of law to deny the Plaintiff of his Fourth, Fifth, and Fourteenth Amendment rights to protection from unlawful search and seizure, equal protection, and due process by falsely arresting, wrongfully detaining, unlawfully and falsely arresting and detaining the Plaintiff, for which there was no evidence or substantiation of any kind.  In doing so, the Defendants violated clearly established law and the rights to which Mr. Lanier was entitled and did so with recklessness, callous indifference to the outcome of their actions and with malice, all in violation of 42 U.S.C. § 1983.

73.     As a consequence of Defendants' wrongful actions, intentional, negligent, and reckless behavior, and violations of state and federal laws, Plaintiff was deprived of her freedom, was made to suffer physical injuries, great pain and suffering, and was subjected to great fear and terror, personal humiliation, degradation, and continued to suffer physical pain and mental and emotional distress as a result of the aforesaid unlawful conduct of the Defendants.

74.     That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs and attorneys fees, and any other relief this Court may find just and proper.

## AS AND FOR A FIFTH COUNT
### 42 U.S.C. § 1983 - EQUAL PROTECTION

75.     Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 74 of this *Complaint* with the same force and effect as though fully set forth herein.

76.     Any accusations of wrongful conduct against Plaintiff were improper and false, and were an attempt to disguise and cover-up the Defendant VILLAGE, GCPD, KNEISEL, MAUREN,

18

BYRD, and RUSSELL wrongful acts towards the Plaintiff, causing a deprivation of his rights, privileges, and/or immunities secured by the Constitution and laws.

77.     The Defendants VILLAGE, GCPD, KNEISEL, MAUREN, BYRD, and RUSSELL lacked probable cause to arrest or retain Plaintiff in prolonged physical custody for a period of time. Had Plaintiff been a White man, he would not have been seized, beaten, arrested, verbally abused and taunted as he was.

78.     The vicious beatings, false arrest, false imprisonment, wrongful detention, forced holding in the police car, verbal abuse, refusal to show his identification, denial of right to move freely as he wished and go home, denial of medical treatment and summary punishment against the Plaintiff by the Defendants were committed under color of the law, based on Plaintiff's race and color.

79.     Plaintiff as an African American, Black man, is and was a member of a protected class under the Constitution. Plaintiff's class may not be subjected to adverse discriminatory treatment based simply on membership in or identification with that class.

80.     The Defendants acted under color of law to deny the Plaintiff of her Fourth, Fifth, and Fourteenth Amendment rights to protection from unlawful search and seizure, equal protection, and due process by falsely arresting, wrongfully detaining, unlawfully and falsely imprisoning, and falsely labeling Plaintiff, for which there was no evidence or substantiation of any kind, based on her race. In doing so, the Defendants violated clearly established law and the rights to which Mr. Lanier was entitled and did so with recklessness, callous indifference to the outcome of their actions and with malice, all in violation of 42 U.S.C. § 1983.

19

81.     As a consequence of Defendants' wrongful actions, intentional, negligent, and reckless behavior, and violations of state and federal laws, Plaintiff was deprived of her freedom, was made to suffer physical injuries, great pain and suffering, and was subjected to great fear and terror, personal humiliation, degradation, and continued to suffer physical pain and mental and emotional distress as a result of the aforesaid unlawful conduct of the Defendants.

82.     That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs and attorneys fees, and any other relief this Court may find just and proper.

## AS AND FOR A SIXTH COUNT
### 42 U.S.C. § 1981

83.     Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 82 of this *Complaint* with the same force and effect as though fully set forth herein.

84.     Plaintiff was targeted by DEFENDANT POLICE OFFICERS BYRD and RUSSELL solely because of his race, that being of African-American descent.  He was then kept in custody cuffed in the back seat of a police care by VILLAGE, GCPD, MAUREN, BYRD and RUSSELL

85.     Plaintiff was detained, arrested, assaulted and beaten by DEFENDANT POLICE OFFICERS solely on the account of his race.

86.     Defendant Village has cooperated with, facilitated and affirmatively participated in official acts of discrimination in areas such as housing as found by the Federal Court Eastern District of New York and the Second Circuit Court of Appeals and has used its governmental authority to foster segregative pattern and practices, including those that target the placement of affordable housing only in predominantly minority communities of Nassau County.

20

87.     Garden City, located near the center of Nassau County, is a very segregated, nearly all-white enclave, particularly compared to neighboring areas, whose population is approximately 95% white, with a total of only 266 African-American residents (constituting approximately 1% of the Garden City population).

88.     The above referenced conduct was part of a pattern and practice of discrimination, based on race and color, taken and condoned by VILLAGE, GCPD, KNEISEL, MAUREN, BYRD, and RUSSELL, which violates 42 U.S.C. §1981 as amended by the Civil Rights Restoration Act of 1991 (Publ. Law No, 102-406).

89.     DEFENDANTS continued the aforesaid discriminatory and retaliatory treatment of Plaintiff on a continuous, ongoing basis, and VILLAGE, GCPD, KNEISEL, MAUREN, BYRD, and RUSSELL above alleged conduct was part of a culture, systemic pattern and practice of discrimination (against Plaintiff as an African-American male).

90.     As a consequence of VILLAGE, GCPD, KNEISEL, MAUREN, BYRD, and RUSSELL wrongful actions, willful neglect, callous indifference, negligent behavior and violation of state and federal laws, Plaintiff was deprived of his freedom, was injured, was subjected to unlawful search and seizure, was subjected to mental anguish, suffered great fear, embarrassment, personal, humiliation, and degradation. All of these rights are secured to Plaintiff by the provisions of the due process clause of the Fifth and Fourteenth Amendment; the equal protection clause and the Fourth Amendment to the United States Constitution as well as the protections afforded under 42 U.S.C. § 1981.

91.     Any accusations of wrongful conduct against Plaintiff were improper and false, and were an attempt to disguise and cover-up the Defendant VILLAGE, GCPD, KNEISEL, MAUREN,

21

BYRD and RUSSELL wrongful acts towards the Plaintiff, causing a deprivation of his rights, privileges, and/or immunities secured by the Constitution and laws.

92.     The Defendants VILLAGE, GCPD, KNEISEL, MAUREN, BYRD, and RUSSELL lacked probable cause to arrest or retain Plaintiff in prolonged physical custody for a period of time. Had Plaintiff been a White man, he would not have been seized, beaten, arrested, verbally abused and taunted as he was.

93.     The vicious beatings, false arrest, false imprisonment, wrongful detention, forced holding in the police car, verbal abuse, refusal to show his identification, denial of right to move freely as he wished and go home, denial of medical treatment and summary punishment against the Plaintiff by the Defendants were committed under color of the law, based on Plaintiff's race and color.

94.     Plaintiff as an African American, Black man, is and was a member of a protected class under the Constitution. Plaintiff and Plaintiff's class may not be subjected to adverse discriminatory treatment based simply on membership in or identification with that class.

95.     In 1969, residents of Garden City opposed the construction of a daycare center that would serve primarily African-American children.

96.     In 1989, a building moratorium on new construction was in effect in Garden City to gain tighter control over housing development; an action the Plaintiffs allege was taken to prevent the influx of minority residents.

97.     In 2005, the New York State Attorney General determined that Garden City enforced a local requirement limiting the use of its parks to Garden City residents in a racially discriminatory manner.

22

98.     In or about 2006 Garden City residents accused Nassau County Executive Suozzi of "catering to ACORN and black people", and begged Suozzi not to "turn GC into Hempstead, Roosevelt, etc. . . .", citing to two towns with a large percentage of minority residents.

99.     Another example of the discriminatory actions taken by the Village Defendants is that the Village decision makers intentionally enacted R-T zone with the intent and purpose of blocking affordable housing in Garden City which actually resulted in racial discrimination.  The vestiges of prior discrimination linger and remain to be eliminated on multiple levels.

100.    VILLAGE, GCPD, KNEISEL, MAUREN, BYRD, and RUSSELL have done nothing to change the actions of its officers and the culture which led to Plaintiff's wrongful treatment.  Past instances of discrimination in Garden City suggest that race-based animus played a role in the decision to grab, arrest, beat, falsely accuse and detain Plaintiff because he was a Black man.

101.    The Defendants acted under color of law to deny the Plaintiff of her Fourth, Fifth, and Fourteenth Amendment rights to protection from unlawful search and seizure, equal protection, and due process by falsely arresting, wrongfully detaining, unlawfully and falsely imprisoning, and falsely labeling Plaintiff, for which there was no evidence or substantiation of any kind, based on her race.  In doing so, the Defendants violated clearly established law and the rights to which Mr. Lanier was entitled and did so with recklessness, callous indifference to the outcome of their actions and with malice, all in violation of 42 U.S.C. § 1981.

102.    As a consequence of Defendants' wrongful actions, intentional, negligent, and reckless behavior, and violations of state and federal laws, Plaintiff was deprived of her freedom, was made to suffer physical injuries, great pain and suffering, and was subjected to great fear and terror, personal humiliation, degradation, and continued to suffer physical pain and mental and

emotional distress as a result of the aforesaid unlawful conduct of the Defendants.

103.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs and attorneys fees, and any other relief this Court may find just and proper.

## AS AND FOR A SEVENTH COUNT
### NEGLIGENCE
### PENDENT JURISDICTION

104.    Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 103 of this *Complaint* with the same force and effect as though fully set forth herein.

105.    Defendant VILLAGE, GCPD, KNEISEL, MAUREN, BYRD, and RUSSELL acted negligently in that they had a duty to act reasonably and responsibly and not to act in a manner that would cause injury and/or harm or the threat of harm to the Plaintiff. Defendant Police Officers had a duty not to subject Plaintiff to vicious beatings, false arrest, false imprisonment, wrongful institutionalization, forced detention in the police car, denial of right to move freely as he wished and go home, seek medical treatment and summary punishment or otherwise abuse Plaintiff. . Defendant Officers had a duty to act as would prudent police officers, by not taking actions which would endanger the life of Plaintiff and not using excessive force or otherwise violating the Constitutional and civil rights of Plaintiff. Defendant Officers, in their actions, breached those duties.

106.    Defendants VILLAGE and GCPD, their agents, employees, and/or servants, violated the Plaintiff's rights secured under the United States Constitution and 42 U.S.C. § 1983, and were careless, negligent and reckless in the care and treatment of Plaintiff by failing to train, supervise, discipline, and investigate  the Defendant Officers involved in the instant matter.  Defendants

24

VILLAGE, GCPD, KNEISEL, MAUREN, BYRD, and RUSSELL knew or should have known of the Defendant Officers' propensities for the conduct which caused substantial and severe injury to the Plaintiff.

107.     In the acts complained of herein, each of the Defendants acted negligently in that they had a duty to properly investigate, act within the scope of their authority, and not to falsely arrest, falsely imprison, use excessive force or otherwise violate the Constitutional and civil rights of Plaintiff, and in that they breached said duty.

108.     That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs and attorneys fees, and any other relief this Court may find just and proper.

## AS AND FOR AN EIGHTH COUNT
### BATTERY
### PENDENT JURISDICTION

109.     Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 108 of this *Complaint* with the same force and effect as though fully set forth herein.

110.     Defendants VILLAGE, GCPD, KNEISEL, MAUREN, BYRD, and RUSSELL , having illegally and unlawfully beat, abused, arrested and imprisoned Plaintiff, continued to violate the rights of the Plaintiff as well as the laws of the State of New York when while continuing the false imprisonment of Plaintiff, Defendant Officers subjected Plaintiff to additional battery.

111.     Defendant Officers wrongfully, unlawfully and without privilege, consent, emergency, necessity, or justification, forced Plaintiff to endure beatings and physical abuse. Plaintiff at no time consented to such abuse or seizure of his person by Defendant Officers. Said actions were intentional and aimed at injuring and causing Plaintiff harm discomfort, pain and humiliation.

25

112.     Plaintiff was beat, brutalized, and physically abused against her will. Plaintiff committed no violation or crime and was not charged with any violation or crime.

113.     Defendant Officers did intentionally beat, brutalize, and abuse Plaintiff, placing her in fear of imminent danger and/or bodily harm, and subjected her to great pain and physical injury by virtue of Defendant Officers' conduct including, but not limited to, the unwarranted and unjustified excessive use of force on Plaintiff's body.

114.     In the acts complained of herein, each of the Defendants acted negligently in that they had a duty to properly investigate, act within the scope of their authority, and not to falsely arrest, falsely imprison, use excessive force or otherwise violate the Constitutional and civil rights of Plaintiff, and in that they breached said duty.

115.     That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs and attorneys fees, and any other relief this Court may find just and proper.

### AS AND FOR A NINTH COUNT
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### PENDENT JURISDICTION

116.     Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 115 of this *Complaint* with the same force and effect as though fully set forth herein.

117.     The Defendant VILLAGE, GCPD, KNEISEL, MAUREN, BYRD, and RUSSELL, through their conduct, acts, and omissions acted outrageously and beyond the bounds of decency for their respective roles in (a) wrongfully arresting, detaining, and punching Mr. Lanier, and (b) concealing, covering up, and failing to redress the wrongs done to Mr. Lanier. As a result, Mr. Lanier has suffered great pain, shame, humiliation and anguish.

118.     The Defendants committed the above stated reprehensible, extreme and outrageous conduct against Mr. Lanier, with intent and full knowledge that their conduct would cause severe and extreme emotional and physical harm to Mr. Lanier, with such extreme emotional harm being intended.

119.     Said extreme emotional harm, with psychological and physical symptoms manifesting therefrom, did in fact occur in this case, in that the Plaintiff, Mr. Lanier, personally suffered and continues to suffer from emotional exhaustion, physical manifestation of symptoms of anxiety, night terrors, sleep disturbances and grief. Plaintiff further suffers the emotional and physical distress of intense stress, anguish, and psychological trauma, knowing that he was debilitated, humiliated, and caused to suffer fear for his life, well-being, and anguish by the acts of the Defendants.

120.     That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs and attorneys fees, and any other relief this Court may find just and proper.

**WHEREFORE** Plaintiff demands judgment against Defendants:

a.     on the First Count in the sum of FIVE MILLION ($5,000,000.00) DOLLARS;

b.     on the Second Count in the sum of FIVE MILLION ($5,000,000.00) DOLLARS;

c.     on the Third Count in the sum of FIVE MILLION ($5,000,000.00) DOLLARS;

d.     on the Fourth Count in the sum of FIVE MILLION ($5,000,000.00) DOLLARS;

e.     on the Fifth Count in the sum of FIVE MILLION ($5,000,000.00) DOLLARS;

f.     on the Sixth Count in the sum of FIVE MILLION ($5,000,000.00) DOLLARS;

g.     on the Seventh Count in the sum of FIVE MILLION ($5,000,000.00) DOLLARS;

h.     on the Eighth Count in the sum of FIVE MILLION ($5,000,000.00) DOLLARS;

I.     on the Ninth Count in the sum of FIVE MILLION ($5,000,000.00) DOLLARS;

j.     Punitive damages in the amount of FIVE MILLION ($5,000,000) DOLLARS;

k.     Award attorney's fees and costs of this action to the Plaintiffs pursuant to 42 U.S.C. § 1988;

l.     Declaratory Judgment that defendants wilfully violated plaintiffs' rights secured by federal and state law as alleged herein;

m.     Injunctive relief, requiring defendants to correct all past violations of federal and state law as alleged herein; to enjoin defendants from continuing to violate federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws;

n.     Award such other and further relief as this Court may deem appropriate.

### *A JURY TRIAL IS HEREBY DEMANDED*

Dated: Hempstead, New York
May 31, 2017

Respectfully submitted,

THE LAW OFFICES OF
FREDERICK K. BREWINGTON

By:     _____

FREDERICK K. BREWINGTON
*Attorney(s) for Plaintiff*
556 Peninsula Blvd.
Hempstead, New York 11550
(516) 489-6959

28